UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


CORTLAND KING,

       Petitioner,

                                      CASE NO. 2:06-CV-14986

v.                                JUDGE GERALD E. ROSEN

                                      MAGISTRATE JUDGE PAUL J. KOMIVES

THOMAS G. PHILLIPS,

       Respondent.[1]

_____/


## REPORT AND RECOMMENDATION

*Table of Contents*

I.    RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.   REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.    *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    B.    *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    C.    *Procedural Default* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    D.    *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    E.    *Denial of Post-Conviction Relief (Claim VII), Actual Innocence, and Perjury* . . . . . . . . . . . . . . 9

    F.    *Prosecutorial Misconduct (Claim II)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

         1.    *Suppression of Evidence* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

             a. Clearly Established Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

             b. Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

         2.    *Prosecutorial Comments* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

             a. Clearly Established Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

             b. Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

         3.    *Res Gestae Witnesses* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

    G.    *Sufficiency of the Trial Court's Verdict (Claims III & IV)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

         1.    *Facts Not in Record* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

         2.    *Inconsistent Verdict* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

    H.    *Polygraph Evidence (Claim V)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

    I.    *Ineffective Assistance of Counsel (Claim I & VI)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

         1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

         2.    *Trial Counsel* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

         3.    *Appellate Counsel* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

    J.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

III.  NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

_____

    [1]By Order entered this date, Thomas G. Phillips has been substituted for Carol Howes as the proper respondent in this action.

I.    <u>RECOMMENDATION</u>: The Court should deny petitioner's application for the writ of habeas corpus.

II.   <u>REPORT</u>:

A.    *Procedural History*

1.    Petitioner Cortland King is a state prisoner, currently confined at the Pugsley Correctional Facility in Kingsley, Michigan.

2.    On May 3, 2002, petitioner was convicted of one count of second degree criminal sexual conduct (CSC-II), MICH. COMP. LAWS § 750.520c(1)(a), following a bench trial in the Wayne County Circuit Court. Petitioner was acquitted of two other CSC-II charges. On May 30, 2002, he was sentenced to a term of 1-15 years' imprisonment.

3.    Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

> I.    THE TRIAL COURT'S FINDING THAT APPELLANT WAS NOT GUILTY ON TWO COUNTS AND GUILTY ON ONE COUNT OF SECOND DEGREE CRIMINAL SEXUAL CONDUCT IS AN INCONSISTENT VERDICT WHICH REQUIRES REVERSAL.
>
> II.   THE TRIAL COURT'S USE OF FACTS NOT OF RECORD IN IT'S CONVICTION OF APPELLANT CONSTITUTES REVERSIBLE ERROR AND REQUIRES THAT THE APPELLANT BE GRANTED A NEW TRIAL.

Petitioner also filed a *pro se* supplemental brief, raising the following additional claim:

> A REVERSAL OF THE CONVICTION IS REQUIRED WHEN THE CUMULATIVE EFFECT OF MULTIPLE ERRORS RESULTED IN THE APPELLANT BEING DENIED EFFECTIVE ASSISTANCE OF COUNSEL WHERE COUNSEL FAILED TO FILE A RAPE SHIELD NOTICE, PROPERLY INVESTIGATE THIS CASE, SUBPOENA WITNESSES, AND EFFECTIVELY CONFRONT THE COMPLAINANT REGARDING HISTORY, MOTIVE, INTENT, KNOWLEDGE AND INCONSISTENCIES, WHICH RENDERED THE OUTCOME OF THE TRIAL TO BE DIFFERENT IN LIGHT OF THE ABSENCE

OF ANY PHYSICAL EVIDENCE OR CORROBORATION SUPPORTING THE COMPLAINT.

The court of appeals found no merit to petitioner's claims, and affirmed his conviction and sentence.

*See People v. King*, No. 244060, 2004 WL 345427 (Mich. Ct. App. Feb. 24, 2004) (per curiam).

    4.    Petitioner, proceeding *pro se*, sought leave to appeal these three issues to the Michigan Supreme Court. Petitioner also raised three new claims:

> I.    WHEN A DEFENDANT, IN A CREDIBILITY CONTEST, PASSES THE PROSECUTION'S POLYGRAPH TEST THEN IT IS A VIOLATION OF THE DEFENDANT'S DUE PROCESS RIGHTS IF THE PROSECUTION DOES NOT REQUEST THE COMPLAINANT TO TAKE A POLYGRAPH EXAMINATION IN ACCORDANCE WITH MCL 776.21, OR DISMISS THE CHARGES.

> II.    THE APPELLANT'S DUE PROCESS RIGHTS WERE VIOLATED FROM PROSECUTORIAL OVERREACHING AND MISCONDUCT.

> III.    APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF APPELLATE COUNSEL.

The Supreme Court denied petitioner's application for leave to appeal in a standard order. *See People v. King*, 471 Mich. 933, 689 N.W.2d 234 (2004).

    5.    Petitioner subsequently filed a motion for relief from judgment in the trial court pursuant to MICH. CT. R. 6.500-.508, raising the three claims that he raised as new claims in the Michigan Supreme Court. The trial court denied the motion on August 9, 2005. Petitioner sought leave to appeal in the Michigan Court of Appeals and Michigan Supreme Court, raising the following claims:

> I.    IS A REVERSAL OF THE CONVICTION REQUIRED WHEN THE CUMULATIVE EFFECT OF MULTIPLE ERRORS RESULTED IN THE APPELLANT BEING DENIED EFFECTIVE ASSISTANCE OF COUNSEL?

> II.    WAS THE APPELLANT'S DUE PROCESS RIGHTS VIOLATED FROM

THE PROSECUTOR'S OVERREACHING AND MISCONDUCT?

III.     DOES THE TRIAL COURT'S USE OF FACTS NOT OF RECORD IN IT'S CONVICTION OF APPELLANT CONSTITUTE REVERSIBLE ERROR AND REQUIRE THAT THE APPELLANT BE GRANTED A NEW TRIAL?

IV.     DID THE TRIAL COURT'S USE OF FACTS NOT OF RECORD IN IT'S CONVICTION OF APPELLANT CAUSED [sic] IT TO RENDER AN INCONSISTENT VERDICT WHICH REQUIRES REVERSAL?

V.     DOES MCL 776.21 AFFORD THE APPELLANT THE RIGHT TO DEMONSTRATE INNOCENCE AND OBVIATE THE NEED FOR TRIAL, AND WAS APPELLANT'S DUE PROCESS RIGHTS VIOLATED ACCORDINGLY?

VI.     WAS APPELLANT DENIED EFFECTIVE ASSISTANCE OF APPELLATE COUNSEL?

VII.     DOES THE TRIAL COURT'S ORDER THAT APPELLANT'S MOTION FOR RELIEF OF JUDGMENT BE DENIED DEPART FROM ESTABLISHED POLICIES?

The Michigan Court of Appeals and Michigan Supreme Court denied petitioner's applications for leave to appeal in standard orders, based on petitioner's "failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. King*, 477 Mich. 866, 721 N.W.2d 210 (2006); *People v. King*, No. 264725 (Mich. Ct. App. Mar. 23, 2006).

    6.     Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on November 6, 2006. As grounds for the writ of habeas corpus, he raises essentially the seven claims that he raised in the state appellate courts on his motion for relief from judgment:

I.     DENIAL OF EFFECTIVE ASSISTANCE OF COUNSEL.

II.     CONVICTION OBTAINED BY THE UNCONSTITUTIONAL FAILURE OF THE PROSECUTION TO DISCLOSE FAVORABLE EVIDENCE TO THE PETITIONER.

III.     THE TRIAL COURT USED FACTS NOT ON THE RECORD TO

4

CONVICT PETITIONER.

IV.     THE TRIAL COURT'S VERDICT WAS INCONSISTENT.

V.      MICHIGAN AND THE FEDERAL COURTS HAVE LONG HELD THAT
        FAVORABLE POLYGRAPH RESULTS CAN BE USED TO SUPPORT A
        MOTION FOR NEW TRIAL IN CONJUNCTION WITH EVIDENCE OF
        PERJURY.

VI.     DENIAL OF EFFECTIVE ASSISTANCE OF APPELLATE COUNSEL.

VII.    TRIAL COURT'S ORDER THAT PETITIONER'S MOTION FOR RELIEF
        FROM JUDGMENT BE DENIED DEPARTS FROM ESTABLISHED
        POLICIES.

7.      Respondent filed his answer on May 7, 2007. He contends that petitioner's first and

fourth claims are without merit, and that petitioner's remaining claims are barred by petitioner's

procedural default in the state courts.

8.      Petitioner filed a reply to respondent's answer on May 24, 2007. Petitioner also filed,

on November 26, 2007, a motion to supplement the pleadings in response to the Court's denial of

his request for discovery. This motion, in substantial part, is likewise in the nature of a reply.

B.      *Factual Background Underlying Petitioner's Conviction*

The evidence adduced at trial was accurately summarized in petitioner's brief to the

Michigan Court of Appeals on direct appeal:

> The Victim testified that she was related to the Appellant and that he would
> sometimes babysit her and her sister. (61-63) That when she was there at night her
> and her sister would sleep in bunk-beds in a downstairs room or on some occasions
> with the Appellant in his upstairs room. That the alleged assaults only took place in
> the Appellant's upstairs bedroom. (64-65). That the Appellant would make her
> touch and rub his penis. Sometimes Appellant would be wearing clothes and
> sometimes not. She could not be sure of the total number of times, when or what
> season or seasons they happened or the number of times with or without clothes.
> Sometimes the Appellant would ejaculate. (66-67, 89, 92, 96-97) That because
> Appellant would warn her not to tell anyone or he would get in trouble, and because
> she didn't want to get Appellant in trouble, she did not tell anyone right away. (69-

70) That the first person she told of these events, approximately three months after the Appellant stopped baby sitting her, was her mother. (70-71).

The Victim's mother testified that the Appellant was her cousin and that he would babysit for her kids. (6-8) That on February 13th, 2001, she and the Appellant had a disagreement over his disciplinary actions with regard to the Victim specifically and that the Appellant never babysat for her after that day. (10-11) That during the later part of May, 2001, the Victim had approached her and they had discussed the alleged assaults. The Victim could not specify the number of assaults for her. (11-12, 16). And, that she thereafter when to the police. (13) The Prosecution presented no further witnesses. (108)

Appellant first presented testimony from his neighbors who spoke very highly of him and his reputation in the neighborhood.

Appellant's mother and step-father testified that at the time of the allegations the Victim's mother was at war with them and the Appellant due to their backing of the Victim's father, mother's ex-husband, in a visitation situation. That as a result of this feud the Victim's mother had made prior false accusations against them. (120, 127-128, 131-135)

The Appellant testified first and foremost that [he] did not do what he was accused of. (142) Appellant then testified regarding prior untrue allegations against his mother by the Victim's mother as well as to the underpinnings of the discipline argument between himself and the Victim's mother. (142-144, 149, 153) Appellant admitted that there were times when the children were scared that they came and slept in his bed. And, that on those occasions, he would wait for them to fall asleep and then go sleep on the couch. (148)

Following the resting of Appellant's case the parties stipulated that the date of the complaint with the Detroit Police was May 16th, 2001. (160)

Def.-Appellant's Br. on App., in *People v. King*, No. 244060 (Mich. Ct. App.), at 1-3; *see also*, *King*, 2004 WL 345427, at *1-*2, slip op. at 1-2.

C.    *Procedural Default*

Respondent first contends that several of petitioner's claims are barred by petitioner's procedural default in the state courts, because petitioner failed to raise these claims on direct appeal. However, even assuming that the claims are defaulted, it is still necessary to consider the claims on the merits. Petitioner can still have his defaulted claims reviewed on the merits if he can show cause for, and prejudice attributable to, his default in the state courts. Petitioner contends that his appellate counsel was ineffective for failing to raise these claims on direct appeal. If petitioner's position is

correct, counsel's ineffectiveness may constitute cause to excuse any procedural default. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To demonstrate that appellate counsel was ineffective petitioner must show, *inter alia*, that his claims would have succeeded on appeal. *See Smith v. Robbins*, 528 U.S. 259, 285-86 (2000); *McCleese v. United States*, 75 F.3d 1174, 1180 (7th Cir. 1996). Given that the cause and prejudice inquiry merges with an analysis of the merits of petitioner's defaulted claims, it is better to simply consider the merits of these claims, even if they are defaulted. *See Jamison v. Collins*, 100 F. Supp. 2d 647, 676 (S.D. Ohio 2000); *Watkins v. Miller*, 92 F. Supp. 2d 824, 832 (S.D. Ind. 2000); *cf. Strickler v. Greene*, 527 U.S. 263, 282 (1999) (considering merits of petitioner's habeas claims where inquiry into the merits mirrored cause and prejudice inquiry).

D.      *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its

decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

E.    *Denial of Post-Conviction Relief (Claim VII), Actual Innocence, and Perjury*

Because petitioner's entire application is intertwined with his general claim that he is actually innocent and that the victim and her mother perjured themselves at trial, it is appropriate to begin with petitioner's seventh claim and his more general claim of innocence. In his seventh claim, petitioner claims that the trial court erred in denying his motion for relief from judgment because the court did not review his claim that the victim and her mother perjured themselves at trial, and because he was not afforded an opportunity to confront the victim and her mother regarding their perjurious trial testimony. The Court should conclude that petitioner is not entitled to relief on this claim, or on his more general claim of innocence.

Because a federal habeas court may not correct a state court's misapplication of its own law,

*see, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Beck v. Washington*, 369 U.S. 541, 544 (1969), a state trial court's denial of a motion for a new trial based upon newly discovered evidence is not a ground for habeas relief.  As one court has explained:

> The criteria for a trial court in granting or denying a new trial are matters of state law.  As such an incorrect application would not be grounds for federal habeas corpus relief, unless the alleged error constituted "a fundamental defect which inherently results in a complete miscarriage of justice."

*Ward v. Wolff*, 499 F. Supp. 1129, 1131 (D. Nev. 1980) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)); *see also*, *Buford v. Perini*, No. 85-3862, 1986 WL 18098, at *3 (6th Cir. Oct. 10, 1986) ("[T]he denial of petitioner's post-trial motion [for new trial based upon newly discovered evidence] is simply a matter of state law which cannot serve as a basis for federal habeas corpus relief."); *Subilosky v. Callahan*, 689 F.2d 7, 9 (1st Cir. 1982).  Nor does the trial court's failure to hold an evidentiary hearing on petitioner's newly discovered evidence claim in connection with his postconviction motion warrant habeas relief.  Nothing in the Constitution requires a state to establish a system of postconviction review, and thus "an infirmity in a state post-conviction proceeding does not raise a constitutional issue cognizable in a federal habeas petition." *Gee v. Groose*, 110 F.3d 1346, 1351-52 (8th Cir. 1997) (internal quotation omitted); *accord Dawson v. Snyder*, 988 F. Supp. 783, 826 (D. Del. 1997) (citing *Steele v. Young*, 11 F.3d 1518, 1524 (10th Cir. 1993) and *Duff-Smith v. Collins*, 973 F.2d 1175, 1182 (5th Cir. 1992)).  Accordingly, the trial court's failure to hold an evidentiary hearing, even if erroneous under state law, does not entitle petitioner to habeas relief. *See Chaussard v. Fulcomer*, 816 F.2d 925, 932 (3d Cir. 1987); *Edwards v. State of Kansas*, 751 F. Supp. 197, 199 (D. Kan. 1990).

With respect to petitioner's more general argument that he is innocent, a writ of habeas corpus may be granted "only on the ground that [the petitioner] is in custody in violation of the

Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Thus, the existence of new evidence, standing alone, is not a basis for granting the writ. As the Supreme Court has explained: "Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993); *see also*, *id*. at 404 (claim of actual innocence is "not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise [procedurally] barred *constitutional* claim considered on the merits.") (emphasis added); *Schlup v. Delo*, 513 U.S. 298, 314-16 (distinguishing, in part, *Herrera* because in this case the petitioner "accompanie[d] his claim of innocence with an assertion of constitutional error at trial."); *Townsend v. Sain*, 372 U.S. 293, 317 (1963) ("Of course, such evidence must bear upon the constitutionality of the applicant's detention; the existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus."), *overruled in part on other grounds*, *Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992). Thus petitioner's claim of innocence, standing alone, provides no basis for habeas relief.

Finally, although not raised as an independent claim, petitioner asserts that the victim and her mother committed perjury regarding the sexual assault occurring, and that the victim's mother perjured herself when she testified that her custody battle with the victim's father was not contentious. Even assuming, *arguendo*, that petitioner can establish that the victim and her mother perjured themselves, petitioner is not entitled to habeas relief on this basis because petitioner has not alleged that the prosecutor knew or should have known of the alleged perjury. As the Sixth Circuit has explained, in order for a witness's perjury at trial to constitute a basis for habeas relief,

the petitioner must show "prosecutorial involvement in the perjury." *Burks v. Egeler*, 512 F.2d 221, 229 (6th Cir. 1975). The Sixth Circuit has repeatedly reaffirmed the requirement that a petitioner show prosecutorial involvement in the perjury. *See, e.g.*, *King v. Trippett*, 192 F.3d 517, 522 (6th Cir. 1999); *Ford v. United States*, No. 94-3469, 1994 WL 521119, at *2 (6th Cir. Sept. 23, 1994); *Akbar v. Jago*, No. 84-3540, 1985 WL 13195, at *1 (6th Cir. Apr. 10, 1985); *Roddy v. Black*, 516 F.2d 1380, 1383 (6th Cir. 1975). And the Supreme Court has repeatedly characterized the Due Process Clause only as barring conviction on the basis of perjury known by the prosecution to be such. *See, e.g.*, *Napue v. Illinois*, 360 U.S. 264, 269 (1959) (emphasis added) ("[I]t is established that a conviction obtained through use of false evidence, *known to be such by representatives of the State*, must fall under the Fourteenth Amendment."); *United States v. Agurs*, 427 U.S. 97, 103 (1976) (emphasis added) (due process is violated by the "*knowing* use of perjured testimony."); *see id.* at 103-04 & nn. 8-9 (discussing cases).

In short, regardless of the correctness of the state courts' decisions with respect to the newly discovered evidence as a matter of state law, petitioner has failed to establish that their handling of this issue was contrary to, or an unreasonable application of, any clearly established Federal law as determined by the Supreme Court. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

F.      *Prosecutorial Misconduct (Claim II)*

In his second claim, petitioner contends that the prosecutor suppressed favorable evidence. He also contends that the prosecutor committed misconduct by vouching for the witnesses and making prejudicial innuendoes. Finally, petitioner contends that the prosecutor failed to endorse as witnesses several *res gestae* witnesses. The Court should conclude that petitioner is not entitled to

habeas relief on this claim.

1.      *Suppression of Evidence*

Petitioner first contends that he was denied a fair trial by the prosecutor's suppression of a May 16, 2001, police report.  At trial, the prosecutor elicited from petitioner testimony that the contentious visitation issues between the victim's mother and father occurred in June or July 2001. *See* Trial Tr., at 152.  The prosecutor then attempted to get defense counsel to enter into a stipulation based on the victim's and mother's witness statements, which had been made on May 16, 2001. Defense counsel objected, indicating that he had never seen the particular page of the report that the prosecutor was relying on.  *See* Trial Tr., at 156-59.  Defense counsel ultimately refused to stipulate to allowing the document into evidence, but did stipulate that the date of the victim's complaint to the police was May 16, 2001.  *See id*. at 159-60.  Petitioner contends that the prosecutor knew that the visitation hearing between the petitioner's mother and father occurred on May 15, 2001, the day before the victim's complaint to the police, and that he was denied a fair trial by the suppression of the report.  The Court should conclude that petitioner is not entitled to habeas relief on this claim.

*a.  Clearly Established Law*

The Due Process Clause requires the state to disclose exculpatory evidence to the defense. *See Brady v. Maryland*, 373 U.S. 83 (1963).  "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued."  *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). Thus, in order to establish a *Brady* claim, petitioner must show that: (1) evidence was suppressed by the prosecution in that it was not known to petitioner and not available from another source; (2)

the evidence was favorable or exculpatory; and (3) the evidence was material to the question of petitioner's guilt. *See Carter v. Bell*, 218 F.3d 581, 601 (6th Cir. 2000); *Luton v. Grandison*, 44 F.3d 626, 628-29 (8th Cir. 1994); *see also*, *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999); *Moore v. Illinois*, 408 U.S. 786, 794-95 (1972). Petitioner bears the burden of establishing each of these three elements. *See Carter*, 218 F.3d at 601. Further, although *Brady* requires disclosure of exculpatory evidence, it is well established, that "*Brady* . . . does not require the government to create exculpatory material that does not exist." *United States v. Sukumolachan*, 610 F.2d 685, 687 (9th Cir. 1980); *see also*, *Richards v. Solem*, 693 F.2d 760, 766 (8th Cir. 1982) ("Although the state has a duty to disclose evidence, it does not have a duty to create evidence.").

### b. Analysis

At the outset, the record does not establish that the police report was suppressed. Trial counsel was petitioner's second or third attorney, and the prosecutor represented to the court, without contradiction, that the report had been turned over to one of petitioner's attorneys, and petitioner's counsel indicated that he had reviewed the prosecutor's files. *See* Trial Tr., at 157. Further, counsel did not indicate that he had not seen the report, only that he had not seen the particular page of the report to which the prosecutor was referring. *See id.* Thus, it does not appear that there was any suppression at all. Further, there was no suppression here because, even assuming that petitioner had not been provided with the report prior to trial, he was provided the report at trial. Because the purpose of *Brady* is to permit a defendant to put all exculpatory information before the factfinder, "*Brady* generally does not apply to delayed disclosure of exculpatory information, but only to a complete failure to disclose." *United States v. Davis*, 306 F.3d 398, 421 (6th Cir. 2002) (internal quotation omitted). "[I]f previously undisclosed evidence is disclosed, as here, during trial,

no *Brady* violation occurs unless the defendant has been prejudiced by the delay in disclosure." *Norris v. Schotten*, 146 F.3d 314, 334 (6th Cir. 1998) (internal quotation omitted); *accord Davis*, 306 F.3d at 421 ("Delay violates *Brady* only where the delay causes prejudice."); *United States v. Bencs*, 28 F.3d 555, 560-61 (6th Cir. 1994).

Here, petitioner offers no reason why he could not make use of the police report at trial despite the allegedly delayed disclosure. Indeed, in light of petitioner's trial testimony, the report was not exculpatory, but was inculpatory. Petitioner's claim does not go the report at all; rather, the information which would have tended to exculpate petitioner was the evidence that the visitation hearing had occurred on May 15, 2001, one day prior to the victim's complaint, and it is this evidence which petitioner contends the prosecutor tried to hide from the trial court. There is simply no evidence, however, that the prosecutor knew of the status of the visitation proceedings–or indeed even knew such proceedings existed. And, even if the prosecutor did know of the proceedings, there is nothing to suggest that petitioner could not have discovered this information on his own. It is well established that "[t]here is no *Brady* violation where a defendant knew or should have known the essential facts permitting him to take advantage of any exculpatory information, or where the evidence is available . . . from another source, because in such cases there is really nothing for the government to disclose." *Coe v. Bell*, 161 F.3d 320, 344 (6th Cir. 1998) (internal quotations omitted); *see also*, *Spirko v. Mitchell*, 368 F.3d 603, 610 (6th Cir. 2004). Petitioner obviously knew of the visitation issues between the victim's mother and father, as both he and his witnesses testified to the dispute between the victim's mother and father and his entire defense was based on the theory that the victim's mother was concocting the crime to retaliate against him for having helped the victim's father. There is also no reason to conclude that petitioner or his counsel could not have

perused the circuit court's public records and discovered the dates of any hearings in that visitation dispute. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### 2. *Prosecutorial Comments*

Petitioner next contends that he was denied a fair trial by improper prosecutorial comments. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

### a. *Clearly Established Law*

For habeas relief to be warranted on the basis of prosecutorial misconduct, it is not enough that the prosecutor's conduct was "undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). Rather, the misconduct must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* (internal quotation omitted). "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). In determining whether the prosecutor's conduct was so egregious as to warrant habeas relief, a court should consider "the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they are isolated or extensive; whether they were deliberately or accidentally placed before the jury; and the strength of the competent proof to establish the guilt of the accused." *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (internal quotations and citations omitted). In sum, to constitute a denial of due process the prosecutor's conduct must be "so pronounced and persistent that it permeates the entire atmosphere of the trial." *Id.* (internal quotation omitted).

### b. *Analysis*

Petitioner's first argues that the prosecutor committed misconduct in responding to counsel's

attempt to question the victim regarding a prior sexual assault allegation she had made.  The prosecutor objected, stating that there was no prior false allegation: "And I, as an officer of the Court, put on the record that there were no false accusations made.  And we stick by that. . . .  I believe that if we were to question both parent and child about it, that still they will not admit that it's a false allegation; in fact, they well tell that it's true.  Given that, defense counsel would have had to file a rape shield notice on that issue; not a false allegation, but prior sexual assaults."  Trial Tr., at 105-06.  Petitioner contends that this statement constituted impermissible vouching.  The Court should disagree.

Although the prosecutor did represent that there were no false accusations made, the prosecutor immediately explained that this conclusion was based on the testimony that the victim and her mother would give if questioned about the matter.  The statement was made as part of the prosecutor's objection to the questioning, and was not presented to the court as evidence that the court should consider in reaching its verdict.  Further, even assuming that the prosecutor's comment was improper, the possibility of prejudice in these circumstances is minimal because "a trial judge acting as the finder of fact is presumed to have followed the law and relied only upon the evidence presented in rendering a verdict." *Matthews v. Abramajtys*, 92 F. Supp. 2d 615, 642 (E.D. Mich. 2000) (Tarnow, J.); *accord Harris v. Rivera*, 454 U.S. 339, 346 (1981) ("In bench trials, judges routinely hear inadmissible evidence that they are presumed to ignore when making decisions."); *United States v. Watson*, 87 F.3d 927, 930 (7th Cir. 1996); *United States v. Cardenas*, 9 F.3d 1139, 1155-56 (5th Cir. 1993).  Thus, petitioner was not deprived of a fair trial by the prosecutor's comment.

Petitioner's second challenge to the prosecutor's comments relates to counsel's examination

of Kevin Kulyk, petitioner's stepfather. Counsel attempted to elicit from Kulyk whether the victim had displayed inappropriate affection toward him, as petitioner testified she had done with him. The prosecutor objected on relevance grounds. Counsel responded that Kulyk should be given an opportunity to explain the victim's behavior, at which point the prosecutor interjected, "Why don't we just ask him whether he ever made her rub his penis, and we'll be done with it?" Trial Tr., at 124. There is no question that this interjection was improper, or at least poorly worded. At a minimum, the comment did not reply to the basis of counsel's reasons for seeking Kulyk's testimony on this issue. Notwithstanding, this however, petitioner has not shown how this brief interjection deprived him of a fair trial. As with the comment discussed above, the prosecutor's comment was not a comment on the evidence or a suggestion that Kulyk had sexually assaulted the victim. And petitioner has offered nothing to overcome the presumption that the trial court decided the case solely on the basis of the admissible evidence. Thus, the Court should conclude that petitioner was not denied a fair trial by the prosecutor's comments.

    3.    *Res Gestae Witnesses*

    Petitioner also contends that he was denied a fair trial because the prosecutor failed to endorse a number of *res gestae* witnesses. This claim fails, for two reasons.

    First, while it is true that at the time of petitioner's trial Michigan law required a prosecutor to list all *res gestae* witnesses, *see* MICH. COMP. LAWS §§ 767.40-.40a; *see also*, *People v. Jones*, 641 Mich. App. 659, 236 N.W.2d 531 (1975); *People v. Anderson*, 64 Mich. App. 218, 235 N.W.2d 746 (1975), nothing in the Constitution so requires. It is well established that errors of state law do not provide a basis for habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court

determinations on state-law questions."). Thus, petitioner's claim that the prosecutor violated state law regarding the production of res gestae witnesses is not cognizable on habeas review. *See Johnson v. Hofbauer*, 159 F. Supp. 2d 582, 601 (E.D. Mich. 2001) (Tarnow, J.).

Second, even assuming that petitioner's claim were otherwise cognizable, the claim is without merit because the witnesses he identifies were not *res gestae* witnesses. Under Michigan law, a *res gestae* witness is "one who was an eyewitness to some event in the continuum of a criminal transaction and whose testimony will aid in developing a full disclosure of the facts surrounding the alleged commission of the charged offense." *People v. Hadley*, 67 Mich. App. 688, 690, 242 N.W.2d 32, 34 (1976). Here, none of the witnesses identified by petitioner were eyewitnesses to some even in the continuum of the sexual assaults; rather, they are witnesses who, petitioner claims, would have testified as to various events outside of the alleged crime which would have shed light on the credibility of the victim or her mother. Because the witnesses were not *res gestae* witnesses, the prosecutor's failure to list those witnesses did not violate the statute. Thus, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

G.   *Sufficiency of the Trial Court's Verdict (Claims III & IV)*

In his third and fourth claims, petitioner challenges that sufficiency of the trial court's verdict. Specifically, petitioner contends that the trial court relied on facts not in the record in reaching its verdict, and that the verdict was inconsistent. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.   *Facts Not in Record*

Petitioner first contends that the trial court relied on facts not in the record in reaching its verdict. He bases this argument on the trial court's conclusion that petitioner "made Karissa rub his

penis on or about February 13th, 2001." Trial Tr., at 174-75. Petitioner notes, however, that the victim was unsure of the exact dates of the offense, and that her testimony was somewhat inconsistent. *See, e.g., id.* at 89, 96-97, 107. Further, the victim's mother testified that she did not know when the assaults occurred. *See id.* at 17, 44. From this, petitioner argues that the trial court "imagined" the date of the last assault, and did not rely on facts in the record to reach this conclusion. Petitioner's claim is without merit, for two reasons.

First, notwithstanding the difficulty the victim had in testifying to exact dates for the assaults, there is evidence in the record which supports the trial court's finding. It was undisputed that February 13, 2001, was the last time the victim stayed over at petitioner's house, and the victim testified that the last assault occurred the last time that she stayed over at petitioner's house. *See* Trial Tr., at 107. Second, and more fundamentally, the exact date was not relevant. It is well established that "[t]ime is not of the essence, nor is it a material element, in criminal sexual conduct cases involving a child victim." *People v. Dobek*, 274 Mich. App. 58, 83, 732 N.W.2d 546, 564 (2007) (citing cases). Thus, even if there was no evidence to support the trial court's conclusion that the assault occurred on February 13, 2001, petitioner's conviction is valid so long as the evidence was sufficient to prove beyond a reasonable doubt that he committed a sexual assault against the victim at some time. Accordingly, petitioner is not entitled to habeas relief on this claim.

2. *Inconsistent Verdict*

Petitioner also contends that the trial court's verdict, finding him guilty of one count of CSC but acquitting him on the other two CSC charges, was inconsistent. Petitioner is not entitled to habeas relief on this claim, for two reasons.

First, there is no inconsistency in the verdict. As petitioner notes, the victim was unable to

testify as to how many times she was made to rub petitioner's penis, and she had trouble identifying the exact dates on which the incidents occurred. Thus, the trial court could have concluded that at least one sexual assault occurred, but that there was not sufficient evidence to establish the exact number of assaults. There is nothing inconsistent in the trial court concluding that at least one assault occurred, but that the victim's testimony was not sufficient to establish the exact number of assaults.

Second, even if the verdict were inconsistent, this would not provide a basis for habeas relief. In *Dunn v. United States*, 284 U.S. 390 (1932), the Court held that "[c]onsistency in the verdict is not necessary," because "[e]ach count in an indictment is regarded as if it was a separate indictment." *Id*. at 393. In *Harris v. Rivera*, 454 U.S. 339 (1981), the Court likewise explained that "[i]nconsistency in a verdict is not a sufficient reason for setting it aside. We have so held with respect to inconsistency between verdicts on separate charges against one defendant, and also with respect to verdicts that treat codefendants in a joint trial inconsistently." *Id*. at 345 (citations and footnote omitted). And, the *Harris* Court held, this rule applies equally to convictions arising from bench trials. *See id*. at 346-48. The Court again explained the rationale for this rule in *United States v. Powell*, 469 U.S. 57 (1984):

> As the *Dunn* Court noted, where truly inconsistent verdicts have been reached, "[t]he most that can be said ... is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt." *Dunn*, *supra*, 284 U.S., at 393, 52 S.Ct., at 190. The rule that the defendant may not upset such a verdict embodies a prudent acknowledgment of a number of factors. First, as the above quote suggests, inconsistent verdicts-even verdicts that acquit on a predicate offense while convicting on the compound offense-should not necessarily be interpreted as a windfall to the Government at the defendant's expense. It is equally possible that the jury, convinced of guilt, properly reached its conclusion on the compound offense, and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the lesser offense. But in such situations the Government

has no recourse if it wishes to correct the jury's error; the Government is precluded from appealing or otherwise upsetting such an acquittal by the Constitution's Double Jeopardy Clause.

Inconsistent verdicts therefore present a situation where "error," in the sense that the jury has not followed the court's instructions, most certainly has occurred, but it is unclear whose ox has been gored. Given this uncertainty, and the fact that the Government is precluded from challenging the acquittal, it is hardly satisfactory to allow the defendant to receive a new trial on the conviction as a matter of course. *Harris v. Rivera*, *supra*, indicates that nothing in the Constitution would require such a protection[.]

*Id.* at 64-65 (citations omitted); *see also*, *United States v. Chilingirian*, 280 F.3d 704, 710-11 (6th Cir. 2002). Thus, the rendering of an inconsistent verdict, if such occurred in petitioner's case, does not amount to a constitutional violation, and petitioner therefore is not entitled to habeas relief on this claim.

H.      *Polygraph Evidence (Claim V)*

Petitioner next claims that he was denied due process in connection with the use, or non-use, of the polygraph examination which he passed. Although petitioner's argument is not entirely clear, it appears that petitioner raises a number of claims with respect to the polygraph evidence. The Court should conclude that none of these arguments provides a basis for habeas relief.

Petitioner first appears to argue that he was entitled to a dismissal of the charges based on the result of the polygraph examination. This claim is without merit. Although a criminal defendant in Michigan has a statutory right to a polygraph examination, *see* MICH. COMP. LAWS § 776.21, neither the statute itself nor any Michigan caselaw suggests that a defendant who passes a polygraph is thereby entitled to dismissal of the charges against him. On the contrary, the Michigan Supreme Court has explained that although polygraph examination may be a useful investigatory tool, "[o]rdinarily, dispositional use of polygraph test results should not occur after judicial proceedings

have been instituted." *People v. Reagan*, 395 Mich. 306, 313, 234 N.W.2d 581, 585 (1975).[2]

Petitioner also suggests that the polygraph test results should have been used by counsel to request an examination of the victim and the victim's mother. With respect to the victim, however, the statute expressly provides that "[a] law enforcement officer shall not request or order a victim to submit to a polygraph examination or lie detector test. A law enforcement officer shall not inform a victim of the option of taking a polygraph examination or lie detector test unless the victim inquires concerning such a test or as provided by subsection (3)." MICH. COMP. LAWS § 776.21(2). Further, as with his own polygraph examination, the results of a polygraph of the victim or her mother would not have been admissible at trial, and thus petitioner cannot show any prejudice. Nor has petitioner directed the Court to any case to establish his right, as a constitutional matter, to require that the victim or a witness submit to a polygraph examination. *Cf. Hester v. McBride*, 966 F. Supp. 765, 773 (N.D. Ind. 1997) (in prison disciplinary proceeding, prisoner has no right to require prison officials to administer polygraph examination to witnesses).

To the extent that petitioner claims the polygraph should have been admitted at trial, the claim is without merit. Michigan categorically excludes from evidence the results of polygraph examinations. *See People v. Jones*, 468 Mich. 345, 355, 662 N.W.2d 376, 382 (2003); *People v. Kahley*, 277 Mich. App. 182, 183, 744 N.W.2d 194, 196 (2007). This *per se* rule excluding polygraph results does not infringe petitioner's right to present a defense. *See United States v. Scheffer*, 523 U.S. 303, 309-17 (1998).

---

[2]In *Reagan*, the court determined that the defendant was entitled to dismissal, but only because he and the prosecutor had entered into a plea agreement whereby the prosecutor agreed to dismiss the charges if petitioner passes the polygraph examination. There was no such agreement in petitioner's case.

For these reasons, the Court should conclude that petitioner is not entitled to habeas relief on his polygraph evidence claim.

I.    *Ineffective Assistance of Counsel (Claim I & VI)*

Finally, petitioner contends that his trial and appellate counsel were constitutionally deficient in a number of respects. Specifically, petitioner contends that trial counsel was ineffective for failing to investigate and call various witnesses. Petitioner also contends that appellate counsel was ineffective for failing to raise or properly argue the claims raised in his *pro se* brief and in his motion for relief from judgment. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.    *Clearly Established Law*

The Sixth Amendment right to counsel and the corollary right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id*. at 687. These two components are mixed questions of law and fact. *See id*. at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id*. at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id*.

With respect to the performance prong of the inquiry, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id.* at 689;

*O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695.

2.      *Trial Counsel*

The bulk of petitioner's ineffective assistance claim alleges that counsel was ineffective for failing to investigate and call a number of witnesses. The Michigan Court of Appeals concluded that petitioner had failed to overcome the presumption that counsel's failure to call these witnesses was reasonable trial strategy, and that petitioner had failed to establish prejudice. *See King*, 2004 WL 345427, at *4, slip op. at 4-5. Because this determination was reasonable, the Court should conclude that petitioner is not entitled to habeas relief on these claims.

<u>Tom Parker and Valeria Moran</u>

Petitioner first argues that counsel should have investigated and called Tom Parker, the victim's father, and Valeria Moran, Parker's attorney, as witnesses. According to petitioner Parker could have testified as to the contentious visitation battle. Petitioner also asserts, based on a December 5, 2002, memo from Parker to his then attorney, that Parker could have testified to a number of instances in which the victim's mother made the victim lie. *See* Pet., Ex. E. Petitioner also argues, based on the affidavit of his mother recounting a conversation she had with Valeria

Moran, Parker's attorney during the visitation proceedings, that Moran could have testified as to the nature of the visitation dispute and that she caught the victim's mother in a number of lies during those proceedings. *See* Pet., Ex. G. The Court should conclude that petitioner cannot show that he was prejudiced by these omissions.

With respect to the visitation issue, notwithstanding the victim's mother's denials of any acrimony in the visitation proceedings, there was significant evidence that the custody dispute between the victim's mother and father was contentious through the testimony of petitioner, his mother and step-father, and cross-examination of the victim's mother, and defense counsel argued that petitioner's assistance to Parker in that visitation battle was the basis for what petitioner contended was the victim's false allegation that he had sexually assaulted her. In light of this evidence, it is not reasonably probable that additional evidence relating to the visitation proceeding would have affected the court's verdict.

With respect to Parker's and Moran's purported testimony concerning specific instances of the victim's mother lying, or forcing the victim to lie, petitioner cannot show prejudice because he cannot show that this testimony would have been admissible. Under Rule 608, "[t]he credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but . . . the evidence may refer only to character for truthfulness or untruthfulness." MICH. R. EVID. 608(a)(1). Petitioner does not argue, however, that Parker or Moran could have testified with respect to the general character for truthfulness of the victim's mother. Rather, petitioner contends that these witnesses would have testified to specific instances of her lying or forcing the victim to lie. Such evidence is inadmissible under Rule 608, which further provides that

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in

Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross- examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

MICH. R. EVID. 608(b). Thus, neither Parker nor Moran would have been permitted to testify as to specific instances of either the victim or the victim's mother having lied, and thus petitioner cannot show a reasonable probability that the outcome of the proceeding would have been affected had counsel attempted to introduce their testimony.

Tom Robinson

Petitioner also contends that counsel should have called Tom Robinson as a witness. According to an affidavit from petitioner's mother Tom Robinson, the father of the victim's half-sister, told her that the victim's mother had called the foster care agency to report that her husband, petitioner's step-father, had sexually assaulted a child in their care. *See* Pet., Ex. J. As petitioner presents no affidavit from Robinson himself, it is not clear that Robinson would have been willing and able to testify consistent with the averments of petitioner's mother. In any event, again Robinson's testimony would only have been a specific instance of the victim's mother lying, excluded by Rule 608(b).

Gingerbread Daycare Employees

Petitioner also contends that counsel should have investigated and presented the testimony of Gingerbread Daycare employees. Again, petitioner's only evidence of these employees' purported testimony is the affidavit of his mother, who avers that she spoke with them. She avers that she was told by Colleen Stevens, the owner of the daycare establishment, that Stevens and an employee suspected that the victim's half-sister was the victim of sexual abuse based on her

inappropriate behavior, and that they ultimately decided not to do so. *See* Pet., Ex. L. At the outset, it is not clear that counsel failed to investigate this matter. In his brief, petitioner notes that counsel told him that counsel had in fact called the daycare establishment, and that nobody there remembered the incident. Petitioner alleges only that this statement to him by counsel was a lie, but provides no basis to believe that counsel had any reason to lie about this matter. In any event, again the purported evidence was simply irrelevant and not admissible. Whether the victim's half-sister had been the victim of sexual abuse was simply not relevant to the question of whether or not petitioner sexually abused the victim, nor would it in any way bear on the credibility of the victim or her mother. Thus, petitioner again cannot show a reasonable probability that the result of the proceeding would have been different had counsel attempted to present these witnesses.

Harrison Police Report Witnesses

Petitioner also argues that counsel could have called the authors of a Harrison Police Department report of a sexual assault complaint made by the victim against Jemmifer Preston, and Preston herself.[3] The report indicates that the victim was changing her story, and includes the detective's opinion that Preston was being truthful in her denial of the allegations. *See* Pet., Ex. C. It is not clear, however, that counsel performed deficiently with respect to this evidence. During cross-examination of both the victim and her mother, counsel attempted to elicit information concerning this prior, allegedly false, allegation of sexual abuse. *See, e.g.*, Trial Tr., at 105-06. In light of the limitations on cross-examination on this matter imposed by the trial court, it is doubtful

---

[3]Preston's name is spelled "Jemmifer" in the police report, and petitioner repeats that spelling in his brief. It is not clear if this is the correct first name, or a typographical error in the spelling of "Jennifer." For consistency, I use the spelling set forth in the police report and petitioner's brief.

that further extrinsic evidence of the allegation would have been permitted. And, indeed, extrinsic evidence of the allegedly false prior allegations of sexual abuse would have been inadmissible under Rule 608(b). *See People v. Reitmeyer*, No. 276207, 2008 WL 1829563, at *2 (Mich. Ct. App. Apr. 24, 2008); *cf. People v. Jackson*, 475 Mich. 909, 717 N.W.2d 871 (2006) (summary order remanding case for evidentiary hearing regarding defendant's claim that he had been improperly precluded from offering evidence of prior false allegation by victim, noting that "[e]vidence that is admitted for credibility must be admitted in a manner that is consistent with MRE 608(b) . . . .").[4] Thus, petitioner cannot establish prejudice with respect to this ineffective assistance claim.

Dave Dodel and His Daughter

Petitioner next contends that counsel should have investigated and called as witnesses Dave Dodel and his daughter, Bradley Brewer, and Richie Herbert. According to the memorandum prepared by Parker for his attorney, the victim and her mother lived with Dodel and his daughter, and had made a prior false accusation of sexual assault against the daughter. *See* Pet., Ex. E. How Parker had personal knowledge of this is not clear. In any event, again this extrinsic evidence would not have been admissible under Rule 608(b). Thus, petitioner cannot show prejudice arising from counsel's failure to call these witnesses.

Bradley Brewer and Richie Herbert

---

[4]After remand, the Court in *Jackson* reversed the defendant's conviction. *See People v. Jackson*, 477 Mich. 1019, 726 N.W.2d 727 (2007). It did so, however, on the basis that the evidence was independently admissible for a proper purpose under Rule 404. *See id.* The Court did not consider the Rule 608(b) issue. *See id.* at 1022, 726 N.W.2d at 730 (Young, J., dissenting) (explaining that the majority admitted the evidence as substantive evidence under Rule 404, not as appropriate character evidence under Rule 608). Petitioner does not suggest any appropriate basis under Rule 404 for which the evidence could have been admitted, and thus it was admissible solely as credibility evidence under Rule 608, subject to the limitation on extrinsic evidence set forth in Rule 608(b).

Finally, petitioner contends that counsel should have presented the testimony of Bradley Brewer and Richie Herbert. The only information concerning these witnesses is provided in Parker's memorandum, which merely states that each of the men had a tumultuous relationship with the victim's mother after the events at issue in the case. Petitioner does not detail any testimony that these two witnesses could have offered which would have been relevant to the charges against him. Thus, petitioner has failed to show that counsel was ineffective for failing to call these two witnesses at trial.

      3.      *Appellate Counsel*

Petitioner also contends that his appellate attorney was ineffective for failing to properly raise and/or argue the various claims raised in his *pro se* appellate brief, motion for relief from judgment, and habeas petition. In the appellate counsel context, a showing of prejudice requires a showing that petitioner's claims would have succeeded on appeal. *See Smith v. Robbins*, 528 U.S. 259, 285-86 (2000); *McCleese v. United States*, 75 F.3d 1174, 1180 (7th Cir. 1996). As explained in this Report, all of petitioner's claims are without merit, and thus petitioner cannot show that counsel was ineffective for failing to raise them on direct appeal. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

J.      *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.

III.      <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 7/30/08

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on July 30, 2008.

s/Eddrey Butts
Case Manager